IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DERRICK RANKINE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DEBRA SAUERS,[1] et al. | : | NO.  07-2709 |

## REPORT AND RECOMMENDATION

ELIZABETH T. HEY, M.J.                                        June 29, 2012

This is a pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C.

§ 2254, by an individual currently incarcerated at SCI Forest.  For the reasons that follow,

I recommend that the petition be denied.

## I.      PROCEDURAL HISTORY

### A.      Trial and Direct Appeal

On July 16, 2001, following a jury trial before the Honorable Rayford Means of

the Philadelphia Court of Common Pleas, Rankine was found guilty of rape and

aggravated indecent assault.  The facts of the case were set out by the state courts:

> The complainant Gloria Harper is [Rankine's] ex-
> girlfriend.  She testified that on the morning of August 12,
> 1999, after their separation, [Rankine] raped her in her home
> while her daughter slept in the next room.  Their relationship
> had a history of mental and physical abuse; [Rankine] often
> belittled and hit Ms. Harper.

---

[1]Petitioner is currently housed at the State Correctional Institution ("SCI") at
Forest, Pennsylvania.  I have renamed as the primary respondent the current
superintendent of SCI Forest.  See Rules Governing Section 2254 Cases, Rule 2(a)
(petition must name as respondent the state officer who currently has custody of
petitioner).

On that particular morning, Mr. Harper received a telephone call from [Rankine].  They agreed that he would be over shortly to pick up his belongings.  When he arrived, she let him in and they went up to her bedroom to retrieve his things. [Rankine] pushed Ms. Harper onto the bed and pulled her under her knees toward him.  Ms. Harper felt afraid and tried to keep her knees together. [Rankine] then pinched her thigh, causing her legs to open, and forced his finger into her vagina.  Ms. Harper told him "No" and "Stop. [Rankine] then forced his penis inside her vagina while he pinned her on her back.  Ms. Harper tried to wriggle free, but [Rankine] held her down with his hands and the weight of his body.

After [Rankine] left, Ms. Harper, in shock, dressed and went to her job at a drug store.  Her supervisor, Barbara McFadden, noticed a difference in Ms. Harper's usual demeanor and asked if she was alright.  Ms. Harper then confided that she had been raped by [Rankine] that morning.  Ms. McFadden testified that she had come across [Rankine] previously when he came to the store.  On three or four occasions, Ms. McFadden had thrown [Rankine] out of the store for harassing both Ms. Harper and herself.  On the afternoon of this incident, Ms. McFadden sent Ms. Harper home early.  That evening, Ms. Harper reported the rape to the police, and two officers arrived at her apartment at 8:30 p.m.  The officers accompanied her to the hospital, where she was examined with a Johnson rape kit.  A police department analysis later confirmed that the DNA of sperm detected in Ms. Harper's vagina positively matched the DNA of a blood sample later taken from [Rankine].

The court record reflects that during the trial, [Rankine] incurred seven counts of contempt of court for disruptive behavior, including using foul language against the trial judge and failing to obey court instructions.  Two of the contempt citations were issued in succession during the same disruptive act on the morning of the final day of trial, and the final three contempt citations were likewise given during the same disruptive act at the conclusion of the trial.

2

Commonwealth v. Rankine, No. 3103 EDA 2001, at 1-2 (Pa. Super. Sept. 18, 2002)

(quoting Commonwealth v. Rankine, C.P. 00-04-0650, at 1-2 (Phil. C.C.P. Nov. 8,

2001)).[2] On October 16, 2001, Judge Means sentenced Rankine to ten to twenty years'

incarceration on the rape count, into which the sexual assault merged, and a consecutive

term of five to ten years' incarceration on the aggravated indecent assault count, plus two

consecutive terms of two months and twenty-nine days to five months and twenty-nine

days for contempt.  N.T. 10/16/01 at 41-43.

Rankine filed a timely direct appeal represented by new appointed counsel,

claiming that the sentence was unduly harsh and excessive.  On September 18, 2002, the

Superior Court affirmed the judgment of sentence, finding that Rankine failed to raise this

objection before Judge Means, either at the time of or following sentencing, and thereby

waived his claim on appeal.  Commonwealth v. Rankine, 813 A.2d 907 (table), No. 3103

EDA 2001 (Pa. Super. Sept. 18, 2002).  Rankine did not seek review in the Pennsylvania

Supreme Court.

    B.    First PCRA Petition

On or about August 28, 2002, Rankine filed a petition pursuant to Pennsylvania's

Post Conviction Relief Act, ("PCRA"), 42 Pa.C.S.A. §§ 9541-9551.  The petition raised a

---

[2]Judge Means' opinion is not dated, but is stamped filed in the Court of Common
Pleas Criminal Appeals Unit on November 8, 2001.

host of issues.[3]  Counsel was appointed who filed an amended petition.[4]  As set forth in

---

[3]The state court record contains two PCRA petitions raising nearly identical claims, both handwritten, one marked received August 28, 2002, with a postmark of August 19, 2002, and another marked received on August 21, 2002.  Many of the claims or complaints mentioned in these petitions are not pertinent to the pending federal habeas petition.  Those that potentially bear on the issues currently under review are as follows (using, as did Judge Means, the petition filed August 28, 2002):  Judge Means remanded him into custody on April 4, 2001, without a competency hearing under the guise that he was incompetent to stand trial; Judge Means removed attorney Churchville and appointed attorney Dews over his objection on April 3, 2001; Judge Means forced him to stand trial without a competency hearing and trial counsel was ineffective for not requesting a competency hearing; Judge Means refused to remove trial counsel based on irreconcilable differences after Rankine objected to counsel's opening statement; Judge Means refused to allow Rankine to represent himself at trial after he objected to counsel's opening statement and repeatedly asked to represent himself; the evidence was insufficient to support the verdict; Judge Means refused to recuse himself despite Rankine filing a misconduct complaint against him and counsel was ineffective for failing to request recusal; Judge Means failed to give an alibi instruction and his trial and appellate counsel were ineffective in failing to preserve this issue; Judge Means called Rankine a liar in the presence of the jury and offered to buy the juror's lunch "out of his pockets" if they returned a guilty verdict; Judge Means gave a flight instruction after suppressing evidence that proved he was not hiding from the police; trial and appellate counsel were ineffective in failing to raise all of these issues; and trial counsel was ineffective in refusing to call his witnesses, failing to adequately investigate and prepare a defense, failing to present alibi witnesses who were available and willing to testify, refusing to impeach the complaining witness and police witnesses, failing to object to the prosecutor's opening and closing statements, and failing to request a competency hearing on July 10, 2001.

[4]Appointed counsel filed an amended petition on June 11, 2003, but did not state whether or not counsel was pursuing all of the claims listed in Rankine's pro se petition.  Counsel stated that Rankine's pro se petition alleged ineffectiveness of counsel, a constitutional violation so undermining the truth determining process that no reliable adjudication could have taken place, sentence in excess of the lawful maximum, and unavailability of exculpatory evidence that has subsequently become available that would have affected the outcome of the trial.  Commonwealth v. Rankine, No. 0004-0650, Amended PCRA Petition ¶ 6 (filed June 11, 2003).  Counsel raised trial and appellate counsel's ineffectiveness in failing to raise and preserve pre-arrest delay and the sufficiency of the evidence.  Id. ¶ 7.  In his brief in support of the petition filed September 16, 2003, counsel argued that trial counsel was ineffective in failing to challenge pre-

his later opinion, Judge Means construed the petition as alleging ineffectiveness of trial counsel (for failing to litigate motions for pre-trial arrest delay) and of appellate counsel (for failing to raise the pre-arrest delay issue and sufficiency of the evidence), due process violation under the state and federal constitutions, that the sentence was excessive, and new exculpatory evidence.[5]  Judge Means thereafter dismissed the petition, and his reasons were set forth in a written opinion.  Commonwealth v. Rankine, C.P. 0004-0650 (Jan. 21, 2005).[6]  Rankine was granted leave to represent himself on appeal from the denial of PCRA relief.[7]  As best the Superior Court could discern from Rankine's filings,

_____

arrest delay.

[5]There is some question whether appointed counsel filed a Finley letter.  See Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988) (permitting appointed counsel to seek leave to withdraw upon the submission of a "no merit" letter).  The docket sheets contained in the state court record reflect that one was filed on November 14, 2003. However, I was unable to locate the letter in the state court record, and neither Judge Means' nor the Superior Court's opinion references it.  Also, counsel's having filed an amended petition and a supporting brief suggest that no Finley letter was filed or that it was rendered moot.  In fact, a notice of intent to dismiss the petition sent by the court the month after the alleged Finley letter, indicates that the issues raised by counsel were without merit, not that a Finley letter had been filed.  Commonwealth v. Rankine, CP 00-04-650, Notice Pursuant to Pennsylvania Rule of Criminal Procedure 907 (Phila. C.C.P. Dec. 11, 2003).

[6]The Court of Common Pleas docket indicates that the Commonwealth's motion to dismiss was granted on January 13, 2004.  Judge Means' opinion is not dated but is stamped filed in the Common Pleas Criminal Appeals Unit on January 21, 2005.

[7]As noted in its later opinion on collateral appeal, the Superior Court first remanded the case for a determination of counsel's status in the case, after which the PCRA court questioned Rankine, determined that he wished to represent himself, and permitted counsel to withdraw and petitioner to proceed pro se.  See Commonwealth v. Rankine, 903 A.2d 50 (table), No. 555 EDA 2004, at 1-2 (Pa. Super. May 3, 2006); see

he claimed on appeal that he was denied his right to represent himself at trial and that all

prior counsel were ineffective for failing to preserve his claims.[8]  The Superior Court

found no merit to these claims and found that additional claims contained in the argument

portion of Rankine's brief were waived and undeveloped.  Commonwealth v. Rankine,

903 A.2d 50 (table), No. 555 EDA 2004, at 3 (Pa. Super. May 3, 2006).  The

Pennsylvania Supreme Court denied allocatur on November 8, 2006.  Commonwealth v.

Rankine, 911 A.2d 934 (table), No. 318 EAL 2006 (Pa. Nov. 8, 2006).

     C.    Second PCRA Petition

    On January 16, 2007, Rankine filed a second PCRA petition, claiming that there

was insufficient evidence to support his conviction, he was denied due process, the trial

court was biased, he was denied the right to self-representation, he was constructively

denied his right to counsel, and his counsel was ineffective for giving contradictory

---

also Commonwealth v. Rankine, No. 555 EDA 2004 (Pa. Super. Dec. 13, 2005)
(remanding for determination of counsel).

    [8]Rankine's pro se brief in the Superior Court could not be located in the state court
record.  The District Attorney's office located a copy of the brief in their files which was
dated February 18, 2005, and stamped in "Appeals" April 25, 2005, which they scanned
and sent to my office electronically.  On the page entitled "Statement of Matters
Complained of on Appeal," Rankine stated that he "raised all the within matters in pre-
trial pro se motions" and on PCRA but his appointed counsel at trial and on PCRA failed
to raise them.  In the section entitled "Statement of Questions Involved," he stated that he
was denied the right to represent himself and that trial counsel gave contradictory opening
and closing arguments.  The bulk of his brief focused on his claim of denial of the right to
self-representation.  However, in the body of his brief he also claimed judicial bias,
ineffective counsel for undermining his defense and failing to investigate evidence and
call witnesses, fabrication of evidence and presentation of perjured testimony by the
Commonwealth, and a speedy trial violation under the state rules of criminal procedure.

opening and closing arguments, failing to request an alibi instruction, failing to call alibi witnesses, failing to request a cautionary instruction regarding the consideration of prior bad acts, failing to challenge the admissibility of the DNA evidence presented by the Commonwealth at trial, and failing to object to the prosecutor's misquoting testimony to the jury.  He also alleged that all prior counsel were ineffective for failing to preserve these issues.  See Commonwealth v. Rankine, No. 0004-0650, PCRA Petition (filed Jan. 16, 2007).  Judge Means dismissed the petition and Rankine appealed once again to the Superior Court.[9]  Judge Means issued an opinion on July 29, 2010, concluding that each claim lacked merit and that the Court was without jurisdiction because the petition was untimely filed.  Commonwealth v. Rankine, CP-51-CR-0406501-2000 (July 29, 2010). The Superior Court affirmed on May 13, 2011, concluding that the petition was untimely and that Rankine failed to plead or prove the applicability of the exception for after-acquired evidence.  Commonwealth v. Rankine, No. 129 EDA 2010 (Pa. Super. May 13, 2011).  Further, the Superior Court held that Rankine's claim that he was denied the right to self-representation was previously litigated, and that his claims of counsel's ineffective assistance could have been raised previously and would not render the petition timely.  Id.

---

[9]Rankine did not file a timely appeal, but was granted his right to appeal within thirty days following a hearing before Judge Means.  See Commonwealth v. Rankine, CP-51-CR-0406501-2000, at 6 (July 29, 2010).

at 9-10.  Thus, without addressing the merit of Rankine's claims, the Superior Court

concluded that the petition was "patently untimely."  Id. at 10.[10]

       D.      Federal Habeas Petition

On June 29, 2007, while his second PCRA petition was pending, Rankine filed this

petition for habeas corpus relief in this court.  His listed claims can be summarized as

follows:

1.      The evidence was insufficient to support the verdict,

2.      His due process rights were violated because the trial judge was not impartial,

3.      He was denied his right to self-representation and was forced to stand trial without a hearing on his competency to waive counsel,

4.      He was constructively denied the right to counsel because he was not permitted to represent himself and the trial court did not rule on the pretrial motions he filed pro se,

5.      Trial counsel was ineffective for:
          a.     giving contradictory opening and closing arguments,
          b.     failing to challenge the admissibility of the DNA evidence,

_____

[10]The District Attorney states that the Pennsylvania Supreme Court denied Rankine's request for review, see Doc. 64, and the Court of Common Pleas docket similarly states that the Supreme Court denied a petition for allowance of appeal on July 22, 2011.  However, it is not entirely clear that such is the case.  According to the Superior Court docket, on July 11, 2011, the Pennsylvania Supreme Court marked matter number 120 ET 2011 administratively closed.  See Doc. 64-2 (Superior Court Docket No. 129 EDA 2010).  A search of the Pennsylvania Supreme Court on-line docketing system did not disclose any matter corresponding to that number or any matter in Rankine's name other than his 2006 allocator petition.  As there is no indication that the Pennsylvania Supreme Court addressed any of the issues presented by Rankine's second PCRA petition, this discrepancy is immaterial.

      c.     failing to request an alibi instruction,

      d.     failing to call Rankine's alibi witnesses to testify,

      e.     failing to object to or request a cautionary instruction regarding the victim's testimony about prior abuse,

      f.     failing to object when the prosecutor and judge gave a "false flight" instruction and misquoted Rankine's testimony to the jury,

6.     All prior counsel were ineffective for failing to raise all of the above issues,

7.     All prior counsel were ineffective for failing to challenge the preliminary, trial and sentencing transcripts.

See Doc. 6.[11]  Rankine also filed a 126-page hand-written brief in support of his petition, attaching a seventeen-page set of "exhibits," which consist almost exclusively of further handwritten argument and assertions of fact.  See Doc. 7.

On February 25, 2008, the District Attorney submitted a response, arguing that only one of Rankine's claims -- that appellate counsel was ineffective for failing to preserve a claim that Rankine was denied the right to represent himself -- has been exhausted and is without merit, and that the remainder of the claims are procedurally defaulted.  See Doc. 21.  The District Attorney also filed a supplemental response addressing the applicability of Indiana v. Edwards, 554 U.S. 164 (2008) to Rankine's

---

[11]All citations to pages of Rankine's filings in this court will be by reference to the ECF pagination.  Rankine has filed numerous purported petitions in this matter in addition to numerous briefs, motions, and other documents.  He first filed a handwritten document which was filed as a petition.  See Doc. 1.  After being sent the form on which to submit a petition, he completed two such forms.  See Docs. 3, 6.  I have relied primarily on the petition filed as Document Number 6, and following review of the others am satisfied that all of his purported claims are included in the list set out in the text.

case.  See Doc. 22.  Rankine submitted reply and supplemental reply briefs.  See Docs. 30, 31.

The Honorable James Knoll Gardner referred the matter to me to issue a Report and Recommendation ("R&R").  See Doc. 9.  On September 24, 2008, I issued my R&R, recommending that Rankine's mixed petition should be stayed pending conclusion of his second PCRA petition.  See Doc. 39.  On September 29, 2009, Judge Gardner adopted the R&R and placed the matter in suspense.  See Doc. 47.  The Court of Appeals denied Rankine's request for a certificate of appealability.  See Doc. 52.

On January 19, 2012, the District Attorney advised that the second PCRA proceeding had concluded in the Pennsylvania courts.  See Doc. 64.  Thereafter, Judge Gardner removed the case from suspense and referred the matter to me for a supplemental R&R.  See Doc. 66.  I directed the parties to address whether the Supreme Court's recent opinion in Martinez v. Ryan, 132 S. Ct. 1309 (2012), impacted the District Attorney's default argument, Doc. 70, and both parties submitted briefs.  See Docs. 71, 73.[12]

_____

[12]Rankine has also submitted numerous other documents and exhibits which he believes support his claims.  By order dated May 7, 2012, I granted Rankine's various motions for leave to file exhibits and affidavits, stating that they would be considered but directing Petitioner not to file further exhibits or briefs unless granted an evidentiary hearing.  See Doc. 72.  As his claims can be resolved without the need for development of the fact record, I did not order an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).

II.   **DISCUSSION**[13]

    A.   Defaulted Claims

    The District Attorney argues that all but one of Rankine's claims are defaulted

because they were not presented to the state courts in a manner sufficient to allow merits

review.  See Doc. 21 at 9-13.  Although the District Attorney's Response was filed before

the second PCRA proceeding was concluded, his argument remains applicable.

    1.   Procedural default standards

    The doctrine of procedural default is closely related to the requirement that a

habeas claim first be exhausted in state court.  A federal court, absent unusual

circumstances, will not entertain a petition for a writ of habeas corpus unless the

petitioner has first satisfied the exhaustion requirement of section 2254.  See 28 U.S.C.

§ 2254(b).  Under section 2254(c), a petitioner will not be deemed to have exhausted

---

[13]The District Attorney has not raised any defense on the grounds of the one-year
statute of limitations, and it appears that the petition is timely.  Rankine's conviction
became final on October 18, 2002, thirty days after his time expired to seek direct review
in the Pennsylvania Supreme Court.  See Pa. R. App. P. 1113(a).  He filed his first PCRA
petition prior to the conclusion of direct review, and therefore the statute did not begin to
run until that petition was concluded in the Pennsylvania Supreme Court on November 8,
2006.  This matter was initiated by the filing of Rankine's handwritten petition on June
29, 2007, well within one year of that date.  To the extent his later filings raise additional
issues, his subsequent petitions submitted on a form provided by the court as well as his
supporting brief were all filed before the one-year limitations period expired.  See Docs.
3, 6, & 7.  When I originally considered Rankine's petition, I recommended staying the
action rather than dismissing it until the conclusion of his second state collateral
proceeding to avoid jeopardizing the timeliness of his habeas petition.  See Doc. 39 at 7-
10.

available state remedies if he had the right under the law of the state to raise, by any available procedure, the question presented, but failed to do so.  O'Sullivan v. Boerckel, 526 U.S. 838 (1999) ("we ask not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies, i.e., whether he has fairly presented his claims to the state courts"); see also Picard v. Connor, 404 U.S. 270 (1971).  "The exhaustion requirement ensures that state courts have the first opportunity to review convictions and preserves the role of state courts in protecting federally guaranteed rights." Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (quoting Caswell v. Ryan, 953 F.2d 853, 856 (3d Cir. 1992)).

Exhaustion requires the petitioner to present to the state courts the same factual and legal theory supporting the claim.  Landano v. Rafferty, 897 F.2d 661, 669 (3d Cir. 1990).  It also requires the petitioner to preserve each claim at the state appellate level. See Holloway v. Horn, 355 F.3d 707, 714 (3d Cir. 2004) (exhaustion satisfied only if claim fairly presented at each level of the state court system) (citing O'Sullivan, 526 U.S. at 844-45).  The habeas corpus petitioner has the burden of proving exhaustion.  Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).

Additionally, it is not enough that the petitioner present his claims to the state court.  He must also comply with the state's procedural rules in presenting his claims, thereby giving the state courts a full and fair opportunity to address them.

> [A] state prisoner's habeas claims may not be entertained by a
> federal court "when (1) 'a state court has declined to address

> those claims because the prisoner had failed to meet a state
> procedural requirement,' and (2) 'the state judgment rests on
> independent and adequate state procedural grounds.'" Walker
> v. Martin, 562 U.S. __, __ [131 S. Ct. 1120, 1127] (2011)
> (quoting Coleman [v. Thompson], 501 U.S. [722,] 729-30
> [1991]]).

Maples v. Thomas, __ U.S.__, 132 S. Ct. 912, 922 (2012).  A decision based on a state

procedural rule is considered independent if it does not rely on the merits of the federal

claim or rest primarily on federal grounds.  Harris v. Reed, 489 U.S. 255, 260 (1989); see

also Ake v. Oklahoma, 470 U.S. 68, 75 (1985).  "[A] state procedural ground is not

'adequate' unless the procedural rule is 'strictly or regularly followed,'"  Johnson v.

Mississippi, 486 U.S. 578, 587 (1988), and unless the rule "speaks in unmistakable

terms."  Doctor v. Walters, 96 F.3d 675, 683 (3d Cir. 1996).  Thus, the procedural

disposition must comport with similar decisions in other cases so there is a firmly

established rule that is applied in a consistent and regular manner "in the vast majority of

cases."  Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997) (quoting Dugger v. Adams, 489

U.S. 401, 410 n.6 (1989)).

A petitioner's failure to exhaust his state remedies may be excused in limited

circumstances on the ground that exhaustion would be futile.  Lambert, 134 F.3d at 518-

19.  Where such futility arises from a procedural bar to relief in state court, the claim is

subject to the rule of procedural default.  As the Third Circuit has held,

> claims deemed exhausted because of a state procedural bar are
> procedurally defaulted, and federal courts may not consider
> their merits unless the petitioner "establishes 'cause and

13

> prejudice' or a 'fundamental miscarriage of justice' to excuse
> the default."

Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000) (quoting McCandless v. Vaughn, 172

F.3d 255, 260 (3d Cir. 1999)); see also Coleman, 501 U.S. at 731.  The "cause and

prejudice" standard applies whether the default in question occurred at trial, on appeal, or

on state collateral attack.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

To meet the "cause" requirement to excuse a procedural default, a petitioner must

> "show that some objective factor external to the defense
> impeded counsel's efforts to comply with the State's
> procedural rule." . . .  By way of example, the [Supreme]
> Court opined that showing a factual or legal basis for a claim
> was not reasonably available to counsel or showing
> interference by government officials sufficient to make
> compliance impracticable, would constitute acceptable cause .
> . .  Moreover, ineffective assistance of counsel has been
> deemed by the Supreme Court to fall within this standard. . . .
> The Court noted, however, that the exhaustion doctrine
> generally requires that an ineffective assistance claim "be
> presented to the state courts as an independent claim before it
> may be used to establish cause for a procedural default."

Werts, 228 F.3d at 192-93 (quoting and citing Murray v. Carrier, 477 U.S. 478, 488-89

(1986)).[14]

---

[14]In Coleman, the Supreme Court held that counsel's failure to file a timely appeal
of the lower court's dismissal of a post-conviction petition did not constitute cause to
excuse the procedural default because the petitioner had no constitutional right to counsel.
501 U.S. at 752.  Recognizing a "narrow exception" to Coleman, the Court recently held
that a defendant may establish cause for the default of an ineffective assistance claim
where counsel in the initial-review collateral proceeding, where the claim first could have
been raised under state law, was ineffective under the standards of Strickland v.
Washington, 466 U.S. 668 (1984), and where the underlying ineffectiveness claim is "a

To establish prejudice, the petitioner must prove "'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Werts, 228 F.3d at 193.  In order for a petitioner to satisfy the fundamental miscarriage of justice exception to the default rules, the Supreme Court requires that the petitioner show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995) (quoting Carrier, 477 U.S. at 496). This requires that the petitioner supplement his claim with "a colorable showing of factual innocence." McCleskey v. Zant, 499 U.S. 467, 495 (1991) (citing Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986)).  In other words, a petitioner must present new, reliable evidence of factual innocence. Schlup, 513 U.S. at 324.

    2.   Claims that are defaulted

Rankine has left a challenging trail of issues to follow, and I will go through each stage of the Superior Court's review to clarify which issues have been exhausted and which have been defaulted.  First, the only issue raised in Rankine's direct appeal concerned Rankine's sentence, and that issue is not raised in the habeas petition. Therefore, there are no claims to address arising from his direct appeal.

---

substantial one," meaning that "the claim has some merit." Martinez v. Ryan, 132 S. Ct. 1309, 1318 (2012).  The applicability of Martinez to Rankine's case will be discussed below. See infra at 22-25.

Second, the Superior Court stated the following regarding the claims Rankine

presented in his first pro se collateral appeal:

> In the *pro se* brief . . . he lists two issues.  These issues
> are set forth in a rambling, disjointed style and contain a
> number of subissues.  In a general sense, however, we glean
> that [Rankine] is seeking to claim that he was denied the right
> to represent himself at trial resulting in his representation by
> ineffective trial counsel, and that all prior counsel were
> ineffective for failing to properly preserve his claims.

Commonwealth v. Rankine, 903 A.2d 50 (table), No. 555 EDA 2004, at 2 (Pa. Super.

May 3, 2006).  The court ruled on these claims in a single paragraph:

> [W]e note that the record indicates that before trial [Rankine]
> was ordered to undergo a mental health evaluation to
> determine his competency to represent himself at trial.  A
> court finding was later made ruling [Rankine] incompetent.[15]
> This ruling was not challenged on direct appeal and [Rankine]
> points to no facts to support a claim that appellate counsel
> was ineffective for failing to preserve such an issue.  The
> burden of producing the requisite proof that counsel's
> ineffectiveness prejudiced [Rankine]'s case lies with
> [Rankine]. . . .  [Rankine] is unable to sustain that burden in
> this case with his general and unsupported claims that trial
> counsel failed to give effective opening and closing
> arguments.  Further, claims contained in the body of
> [Rankine]'s argument section of his brief regarding
> prosecutorial misconduct, the presentation of perjured
> testimony, bias on the part of the trial judge, and the
> questioning of witnesses are waived as they are not included
> in [Rankine]'s statement of questions and are, nevertheless,

---

[15]In context, this reference to Rankine being "incompetent" refers to his being
incompetent to represent himself.  The question of Rankine's attempts to represent
himself at trial will be addressed on the merits in the following section.  See infra at 30-
38.

> completely undeveloped.  **See Commonwealth v. Doyen**, 848
> A.2d 1007, 1014 (Pa. Super. 2004) (noting that this Court will
> not review issues not properly developed in briefs by citation
> to the record and reference to supporting case law).

Id. at 2-3.  The District Attorney infers from this that the only claim Rankine exhausted

on collateral appeal was the claim that his counsel on direct appeal was ineffective for

failing to preserve the denial of his right to represent himself at trial.  See Doc. 21 at 11.  I

agree that Rankine exhausted that claim, but construe the Superior Court's holding

slightly more broadly.  Specifically, I infer that the Superior Court also recognized

Rankine's claim that his counsel was ineffective in making his opening and closing

arguments.  The Superior Court did not state that that claim was waived, but rather stated

that Rankine failed to sustain his burden on that claim.  Therefore, I conclude that

Rankine did adequately raise that claim.  The remaining claims having been waived, I

agree that they are defaulted.  See Buck v. Colleran, 115 Fed. Appx 526, 528 (3d Cir.

2004) (waiver of claims for failure to present them in Pennsylvania Rule of Appellate

Procedure 1925 statement supported procedural default); Branch v. Tennis, No. 07-3532,

2009 WL 1089560, at *9 n. 5 (E.D. Pa. Apr.22, 2009) (application of Pennsylvania Rule

of Appellate Procedure 2119's waiver provision constituted an independent and adequate

bar to federal habeas review).

　　　The impact of the Superior Court's ruling is that all other issues Rankine raised in

the first PCRA proceeding, but then waived by failing to develop them on appeal, have

been defaulted.  Of the claims Rankine is pursuing on habeas review, the following

claims were defaulted by failing to develop them in his first PCRA appeal: sufficiency of the evidence; denial of due process because the trial judge was partial; and ineffectiveness of trial counsel for failing to call alibi witnesses at trial and failing to challenge the court's flight instruction.

Third, in ruling on Rankine's second PCRA petition, the Superior Court held that the entire petition was "patently untimely," and did not address any of the claims on the merits.  Commonwealth v. Rankine, No. 129 EDA 2010, at 10 (Pa. Super. May 13, 2011). Therefore, the claims presented in that appeal are also defaulted.  See Peterson v. Brennan, 196 Fed. Appx. 135, 142 (3d Cir. 2006) (PCRA statute of limitations is independent and adequate).  Therefore, the following issues that Rankine raises in his federal habeas petition are also defaulted:  ineffectiveness of counsel for not objecting to the DNA evidence, for failing to request an alibi instruction, for failing to request a cautionary instruction or object when the victim testified to Rankine's prior bad acts, for not objecting to the prosecutor's reference to Rankine's testimony in closing argument, and for not challenging the transcripts of the proceedings.

> 3.    Cause and prejudice

In his reply brief, Rankine appears to acknowledge that he did not properly exhaust his state court remedies, placing the blame on the PCRA court's refusal to give him a hearing on his claims due to bias, ill-will and prejudice.  See Doc. 30 at 2.  He also argues there and elsewhere that there existed a conspiracy amongst his various appointed

attorneys and Judge Means to retaliate against him for refusing to pay "blackmail" money to them in the amount of $220,000.  Id. at 3; Doc. 6 at 14.  In response to my order directing the parties to address the impact of Martinez on the default issue, Rankine's response lists the following as cause for his default; he was denied the right to represent himself at trial and in his first PCRA, he was not served with a copy of the transcripts and his PCRA counsel's no-merit letter until 2004 and 2005, PCRA counsel was ineffective for filing a no-merit letter without communicating with him, the Superior Court erred by not remanding his first PCRA petition to the PCRA court once he was permitted to represent himself in the PCRA proceeding, and related arguments echoing his habeas claims.  See Doc. 71 at 4-9.

Rankine's arguments do not establish cause for his defaults.  As noted previously, Rankine must show that some factor external to his counsel's or his efforts caused the default.  With respect to issues that he and his counsel raised in his first PCRA but that he then failed to develop in his pro se appeal, he has provided no reason for his failure.  As reviewed above, he defaulted the following claims by failing to pursue and develop them in his pro se appeal on PCRA: sufficiency of the evidence; denial of due process because the trial judge was partial; and ineffectiveness of trial counsel for failing to call alibi witnesses at trial and challenging the court's flight instruction.[16]  These issues have all

---

[16] It might be argued that Rankine could blame the default on his PCRA counsel for failing to raise certain issues in his statement of issues on appeal which formed the basis for the PCRA's court's review, prior to being granted leave to represent himself.

been defaulted and Rankine presents no basis for a finding of cause.  To the extent

Rankine alleges bias on the part of the trial court and an alleged conspiracy, see Doc. 30

at 3, such allegations did not interfere with Rankine's ability to pursue these claims in his

pro se collateral appeal and cannot serve to provide cause for his failure to develop the

claims at that stage of the litigation.

With respect to issues that were not raised until the second PCRA proceeding or

were never previously raised, the analysis is somewhat different.  As previously stated,

these issues are ineffectiveness of trial counsel for failing to challenge the DNA evidence,

for failing to request an alibi instruction, for not requesting a cautionary instruction or

objecting with respect to the victim's testimony of Rankine's prior bad acts, and failing to

object to the prosecutor's misquoting of Rankine's testimony.  As to these issues, Rankine

could argue that the ineffectiveness of his direct appeal and PCRA counsel provides cause

for his failure to present the claims earlier.  I will address these in turn.

The ineffectiveness of direct appellate counsel can provide cause to excuse a

procedural default.  However, such a claim must, itself, be properly exhausted.  Murray,

477 U.S. at 489; see also Carpenter, 529 U.S. at 452-53 (claim of ineffective counsel

cannot provide cause to excuse a procedural default if that claim is itself defaulted).

Here, Rankine has not properly exhausted a claim that his direct appellate counsel was

_____

However, because the Superior Court based its review on Rankine's own brief on appeal,
any potential default by his appointed counsel was rendered moot.

ineffective for failing to present any of these claims.  In his first PCRA petition, Rankine,

pro se, presented an ineffectiveness claim relating to the failure to request an alibi

instruction, but on appeal he argued that trial and appellate counsel were ineffective in not

calling alibi witnesses, abandoning the challenge to the jury instruction.  See

Commonwealth v. Rankine, No. 555 EDA 2004, Appellant's Brief, Argument Section, at

8 (dated Feb. 18, 2005).  He did raise some of these defaulted claims in his pro se PCRA

appeal (relating to prosecutorial misconduct and questioning of witnesses), but the

Superior Court found them waived.  Thus, his claims of ineffectiveness of his direct

appellate counsel are defaulted and Rankine cannot rely on them to provide cause to

overcome his failure to present the claims in his PCRA petition.

In the context of cause to excuse Rankine's defaults, this brings me to the alleged

ineffectiveness of Rankine's PCRA counsel.  Until recently, such a claim could not

provide cause to excuse a default.  This is because in the past, the Supreme Court had

held that "counsel's ineffectiveness will constitute cause only if it is an independent

constitutional violation."  Coleman, 501 U.S. at 755.[17]  Under this standard, counsel's

ineffectiveness in Rankine's first PCRA could not constitute cause because counsel is not

constitutionally mandated at that level.  See Pennsylvania v. Finley, 481 U.S. 551, 555

(1987) ("Our cases establish that the right to appointed counsel extends to the first appeal

of right, and no further.").

---

[17]See supra at 14 n.14.

However, the Supreme Court recently added a level of complexity to the cause analysis.  See Martinez, 132 S. Ct. 1309.  In Martinez, state law precluded the petitioner from raising claims of trial counsel's ineffectiveness on direct appeal, and post-conviction counsel failed to raise the ineffectiveness claims in the post-conviction petition.  The Court did not recognize an independent constitutional violation, but held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  Id. at 1315.  The Court explained that "if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims."  Id. at 1316.

I directed the parties to address the impact of Martinez on Rankine's case. Rankine's response does not specifically address Martinez but rather argues other reasons for cause which have already been addressed, and also argues that he suffered prejudice and that he is innocent.  See Doc. 71 at 9-11.

The District Attorney has directly addressed Martinez, raising two arguments why the exception to the prohibition on relying on ineffectiveness of collateral review counsel to establish cause for a default does not extend to some or all of Rankine's defaulted claims.  Both arguments flow from the limiting language in Martinez, where the court stated that the "rule of Coleman governs all but the limited circumstances recognized here," namely a claim of ineffectiveness of trial counsel that was defaulted by an

22

ineffective counsel on initial collateral review where the petitioner was not permitted to raise the claim on direct appeal. 132 S. Ct. at 1320. First, the District Attorney argues that Martinez does not apply to the extent Rankine's defaulted claims do not raise ineffectiveness of trial counsel. See Doc. 73 at 2-3. While the District Attorney is correct that only Rankine's claims of ineffectiveness of trial counsel are covered by Martinez, this argument has limited impact on Rankine's case. I have already concluded that Rankine himself defaulted many of these claims by failing to argue them in his pro se PCRA appeal, and he cannot argue his own ineffectiveness as cause for his default. Martinez has no impact on these claims. The remaining defaulted claims all raise ineffectiveness of trial counsel, and thus are unaffected by the first limitation offered by the District Attorney.

The District Attorney's second argument arises from the limitation in Martinez that "[o]ur holding here addresses only the constitutional claims . . . where the State barred the defendant from raising the claims on direct appeal." 132 S. Ct. at 1320. The District Attorney seeks to distinguish Pennsylvania law from the Arizona law at issue in Martinez, arguing that at the time of Rankine's direct appeal, Pennsylvania law permitted claims of ineffectiveness of counsel to be raised on direct appeal, rendering Martinez inapplicable to all of Rankine's defaulted claims. See Doc. 73 at 3-4.

Martinez is a recent decision, and not many courts have yet applied the holding to individual state direct appeal and collateral review schemes. The District Attorney

concedes that since December 31, 2002, the Pennsylvania Supreme Court requires that claims of ineffectiveness of counsel be deferred to collateral review, but argues that no such prohibition existed before that date.  In Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002), the Pennsylvania Supreme Court revisited the Hubbard rule, which provided that "claims of ineffectiveness must be raised at the time a defendant gets new counsel." Grant, 813 A.2d at 732 (citing Commonwealth v. Hubbard, 372 A.2d 687 (1977)).  Under the Hubbard rule, the failure to raise ineffectiveness claims at the earliest opportunity after a defendant obtains new counsel resulted in a waiver of the claims.  Id.  In Grant, the Pennsylvania Supreme Court acknowledged the difficulty of reconciling the Hubbard rule with "traditionally-accepted rules of procedure, which normally do not allow issues to be raised for the first time on appeal and do not allow an appellant to supplement the record on appeal."  Grant, 813 A.2d at 732.  The Grant court overruled Hubbard and stated, "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review."  Grant, 813 A.2d at 738.

Grant was decided on December 31, 2002, after Rankine's direct appeal was decided and after his conviction was final.[18]  Thus, at the time of Rankine's direct appeal, Pennsylvania not only permitted, but required claims of ineffectiveness to be raised on direct appeal if the defendant had new counsel.  Rankine did have new counsel on direct

---

[18]The Superior Court decided Rankine's direct appeal on September 18, 2002, and Rankine did not seek direct review in the Pennsylvania Supreme Court.

appeal, and thus the Hubbard rule applied to his case, resulting in the waiver of his claims

of trial counsel ineffectiveness.  See Commonwealth v. Thomas, __ A.3d __, 2012 WL

1434877, at *5 (Pa. Apr. 26, 2012) (finding claim of ineffectiveness of trial counsel

waived because Hubbard required appellant to raise claim at the onset of new counsel's

representation on direct appeal).  Therefore Martinez is inapplicable to Rankine's case

and his claims remain defaulted.

4.    Fundamental miscarriage of justice

Rankine has also not shown that failure to address his defaulted claim would result

in a miscarriage of justice.  As previously stated, in order to establish this exception to the

default rules, the petitioner must supplement his claim with "a colorable showing of

factual innocence."  McCleskey, 499 U.S. at 495.  The evidence Rankine has proffered

does not rise to the level of new, reliable evidence of innocence required by Schlup.

Rankine's various exhibits and affidavits allege that he did not commit the crime and that

he was somewhere else at the time.  The trial evidence consisted of the testimony of

witnesses as well as physical evidence.  Ms. Harper testified that at approximately 11:30

on the morning of August 12, 1999, Rankine came to her house at 711 Lycoming Street in

Philadelphia and raped her in her upstairs bedroom, that she went to work where she

reported the rape to her supervisor, and that she reported it to police later that evening and

was taken to the hospital for a rape kit.  N.T. 7/12/01 at 89-96.  Ms. Harper's supervisor

testified that Ms. Harper came to work that day and reported the rape.  N.T. 7/13/01 at 44.

25

A police officer testified that on the evening of August 12, Ms. Harper reported the rape to police, who took her to the hospital.  Id. at 59-60.  Evidence was presented by stipulation that a rape kit was performed that evening on Ms. Harper and that a blood sample was later taken from Rankine, and an expert testified that there was a DNA match. Id. at 66, 68, 26.  Rankine was arrested on March 23, 2000.  Id. at 69.  Rankine testified that he went to Ms. Harper's home the evening before and that they had consensual sexual intercourse that night and on the morning of August 12, that he left early that morning and did not rape Ms. Harper, that he was in West Philadelphia at the time the rape was supposed to have happened and that he had a witness to that effect, and that he was not trying to avoid arrest and could prove that because he had made a police report of a stolen bike a few days after the rape.  Id. at 78-79, 87-88, 90.

Rankine argues in his petition that evidence supporting his defense was not presented to the jury; however the evidence he mentions is largely duplicative of his own testimony.  For example, he relies on the conflicting evidence in the record as to whether the incident occurred on August 12 or 13, evidence that he was somewhere else at the time the incident occurred including the testimony of witnesses who were not called at trial, and evidence challenging the complainant's and other Commonwealth witnesses' credibility.  He also alleges that the trial was unfair due to insufficiencies in his counsel's representation and in the judge's bias against him.  However, none of these allegations constitute new and reliable evidence of his actual innocence under the Schlup standard.

26

Therefore, the court does not have a basis upon which to overlook the default of his federal habeas claims.

      B.      <u>Exhausted Claims</u>

The District Attorney concedes that Rankine exhausted one of his claims, namely that his counsel on direct appeal was ineffective for failing to preserve a claim that he was denied the right to represent himself at trial.  <u>See</u> Doc. 21 at 13.  The District Attorney argues that the state courts reasonably rejected this claim and that therefore Rankine is not eligible for relief on the merits.  <u>See id.</u> at 16-25.  I have also concluded that Rankine exhausted his claim that his trial counsel was ineffective in making his opening and closing arguments, and I will address whether the Superior Court reasonably rejected that claim.  First I will briefly review the standards applicable to merits review of an ineffectiveness claim.

      1.      <u>Standard of Review</u>

Merits habeas review is narrow.  The Antiterrorism and Effective Death Penalty Act ("AEDPA") limits federal habeas review of state court judgments by requiring federal courts to give deference to the factual findings and legal determinations of the state courts.  <u>Werts</u>, 228 F.3d at 195-96 (citing <u>Dickerson</u>, 90 F.3d at 90).  A petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim "resulted in a decision contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or if

27

(2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).  Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  Werts, 288 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)).

The Supreme Court expounded upon the two clauses of section 2254(d) in Williams v. Taylor, 529 U.S. 362 (2000).  First, under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 412-13.  Second, under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  An "unreasonable application" occurs "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Id. at 407.

28

2.      Standards governing claims of ineffective assistance of counsel

Claims of ineffective assistance of counsel are governed by Strickland v. Washington, 466 U.S. 668 (1984).  In Strickland, the United States Supreme Court set forth the standard for a petitioner seeking habeas relief on the grounds of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687.  "For AEDPA purposes, the Strickland test qualifies as 'clearly established Federal law, as determined by the Supreme Court.'"  Rainey v. Varner, 603 F.3d 189, 197 (3d Cir. 2010) (quoting Williams, 529 U.S. at 391).

Because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," a court must be "highly deferential" to counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  In determining prejudice, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.

3.     Analysis

a.     Ineffective assistance on appeal

I have previously set out the Superior Court's statement of the issues Rankine raised on PCRA appeal and the court's resolution of those issues.  See supra at 16-17.  In summary, the Superior Court ruled that Rankine waived on direct appeal any objection to the trial court's finding him not competent to represent himself at trial and pointed to no facts that would support a claim that his counsel was ineffective for failing to preserve the issue.  Commonwealth v. Rankine, 555 EDA 2004, at 2-3 (Pa. Super. May 3, 2006).  Without any "proof that counsel's ineffectiveness prejudiced [Rankine]'s case," Rankine failed to meet his burden on his ineffectiveness claim.  The District Attorney argues that the Superior Court's ruling was neither contrary to nor an unreasonable application of federal law.  See Doc. 21 at 13-25.

Rankine's argument is somewhat difficult to discern.  His complaint is that he sought numerous times to represent himself but was not permitted to in violation of his constitutional rights.  As grounds for this claim, he seems to be arguing that the constitutional standards for competence to proceed to trial and to waive counsel are the same, and that, having been found competent to proceed to trial, he should have been permitted to represent himself and his counsel were ineffective for failing to pursue and preserve this issue.  See, e.g. Doc. 7 at 7 (numbered page 5) (citing Godinez v. Moran,

30

509 U.S. 389, 399 (1993)).[19]   The District Attorney argues that Rankine never

---

[19]The Supreme Court held in <u>Dusky v. United States</u>, 362 U.S. 402 (1960), that the standard for competence to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has a "rational as well as factual understanding of the proceedings against him."  In <u>Faretta v. California</u>, 422 U.S. 806, 835-36 (1975), the Court held that a defendant wishing to waive counsel and represent himself must do so "competently and intelligently," and that defendant's "technical legal knowledge" is not relevant to the inquiry.  In <u>Godinez</u>, the Court attempted to reconcile these two tests.  509 U.S. 389.  The defendant had waived his right to counsel and pled guilty and on habeas review argued that he was denied his right to counsel because, although competent to stand trial, he was not competent to waive counsel.  The Supreme Court disagreed, holding that the Due Process Clause does not impose any additional requirements with respect to competency to waive counsel than the requirements for competence to stand trial.  <u>Id.</u> at 402.

Most recently, in <u>Indiana v. Edwards</u>, 554 U.S. 164 (2008), the Court approached the issue from a different perspective.  There the defendant was alternately found competent and not competent to stand trial, and ultimately when trial began the trial court denied his request to proceed pro se, ruling that he was not competent to represent himself.  On direct review, the Supreme Court reinstated the defendant's conviction, answering in the affirmative the question "whether the Constitution permits a State to limit [a] defendant's self-representation right by insisting upon representation by counsel at trial – on the ground that the defendant lacks the mental capacity to conduct his trial defense unless represented."  <u>Id.</u> at 169, 174.  The Court declined to define a standard for competence to waive counsel.  <u>Id.</u> at 178.  <u>Edwards</u> was decided in 2008, more than five years after Rankine's conviction became final.  Whether <u>Edwards</u> applies retroactively to cases that were final when it was decided has not been settled by the courts.  <u>Compare</u> <u>Panetti v. Thaler</u>, No. A-09-CA-774-SS, 2012 WL 290115 (W.D. Tex. Jan. 31, 2012) (defendant who was permitted to represent himself at trial sought habeas relief citing error under <u>Edwards</u>; held <u>Edwards</u> did not apply retroactively to defendant's case under <u>Teague v. Lane</u>, 489 U.S. 288 (1989)) and <u>Wells v. LeFavre</u>, No. 96 Civ. 3417, 2010 WL 2771877 (S.D.N.Y. July 13, 2010) (same) <u>with</u> <u>State v. Wortman</u>, 2011 WL 181341, at *8 n.8 (N.J. App. Div. Jan. 21, 2011) (noting that <u>Edwards</u> has been applied retroactively and that, as it did not announce a new rule, retroactivity inquiry is unnecessary).  Neither party has briefed the retroactivity of <u>Edwards</u>.  As neither Rankine nor the District Attorney is seeking to apply <u>Edwards</u> to his case, the retroactivity issue is not pressing.  Moreover, as I conclude that the Superior Court was reasonable in concluding that Rankine did not request to waive counsel and act pro se, I do not reach the question whether <u>Edwards</u> applies to Rankine's case.

unequivocally, knowingly and intelligently asked to represent himself as required by

relevant caselaw, based on a detailed review of the record and also docket sheets and

mental health evaluations submitted together with the response.  See Doc. 21 at 16-24.[20]

     Against this backdrop, I will review the trial court proceedings with respect to

Rankine's competence.  Rankine was arrested on March 23, 2000.  The docket entries

reflect that questions as to Rankine's competence and as to his representation arose early

in the case.  Relevant docket entries are listed as follows:

| | |
|---|---|
| 6/13/00 | Defense request for Competency Psych Eval. is canceled.  (Judge Richette) |
| 10/2/00 | Kathleen Goughon P.D. is removed . . . .  G[ary] S. Server Esq is appointed . . . . (Judge Snite) |
| 1/19/01 | Motion to remove defense attorney denied . . .  (Judge Snite) |
| 1/29/01 | Mental Health Psych. ordered for competency to represent oneself at trial.  (Judge Snite) |
| 2/2/01 | Mr. Server authorized by Court to have defendant evaluated by Dr. Steven Samuel.  Defendant to report to Community Mental Health Treatment Center to be referred to Day Hosp. Program where meds can be prescribed. . . .  Defendant incompetent. (Judge Snite) |

---

[20]The Common Pleas docket that can be accessed electronically does not contain entries for all of the pretrial events, and the evaluations are not all contained in the state court record.  Attached to the District Attorney's Response (Doc. 21) are the following: Doc. 21-3 (Court of Common Pleas docket); Doc. 21-4 (1/30/01 Mental Health Evaluation by Robert Stanton, M.D.); Doc. 21-5 (3/2/01 Report by Steven Samuel, Ph.D.); Doc. 21-6 (3/12/01 Mental Health Evaluation by Dr. Stanton); Doc. 21-7 (Common Pleas court events); Doc. 21-8 (4/5/01 Mental Health Evaluation by Dr. Stanton); and Doc. 21-10 (7/11/01 Mental Health Evaluation by Dr. Stanton).

| 3/9/01 | Psych ordered.  Defendant to see Dr. Stanton for competency to stand trial. . . .   Gary S. Server removed as counsel, new counsel appointed, John Churchville, Esq.  (Judge Snite) |
|---|---|
| 4/3/01 | Psych. exam completed.  Defendant found incompetent to stand trial and is hereby committed . . . to Norristown State Hosp. as incompetent.  (Judge Means)[21] |
| 7/10/01 | Forthwith Mental Health Eval. was ordered.  (Judge Means) |
| [7/11-16/01 | Jury trial before Judge Means] |

The mental health evaluations contained in the District Attorney's appendix can be summarized as follows, corresponding to the orders and proceedings just listed:

| 1/30/01 | [Defendant] is delusional about his attorney. . . .  He is unable to cooperate with counsel because of his mental state and is also unable to defend himself because of his impaired judgment. . . .  The defendant currently has a major mental illness and is not capable of standing trial . . . . (Dr. Stanton) |
|---|---|
| 3/2/01 | It is my opinion that he was competent to stand trial on the days he and I met [and] his competency in the future would depend upon whether he was compliant with his medication and outpatient treatment. . . . .  I do not believe he could effectively or competently work with you [Mr. Server].  It is my opinion that he has the capacity to work with another attorney provided [they] can develop a working relationship.  (Dr. Samuel) |
| 3/12/01 | [He] remains fixed in his belief that his attorney is working against him.  . . . [I]t appears that he will never be able to work with this particular attorney. . . .  The defendant has a major mental illness and is not yet capable of standing trial . . . because of his attitude towards his current attorney.  (Dr. Stanton) |

---

[21]Although not noted on the docket entry for this date, the court's handwritten record of the hearing states the Mr. Churchville did not appear and that Judge Means appointed attorney Keith Dews to represent Rankine.  <u>See</u> Doc. 21-7.

| 4/5/01 | He has told the clinic staff that he ultimately planned to defend himself.  He reported that he plans to sue various court personnel and that there was a conspiracy involving a prior judge. . . .  Based on his current behavior today, there is serious question as to whether he could control himself in court and not act and speak in a bizarre and inappropriate fashion.  On the basis of his behaviors, he would also appear unable to cooperate adequately with counsel. . . .  The defendant continues to have a major mental illness which interferes with his competency to stand trial.  It is recommended that he be committed . . . for further evaluation and treatment.  (Dr. Stanton) |
| --- | --- |
| 7/11/01 | He demonstrated an intact understanding of his current criminal charges, an intact understanding of the identity and roles of his lawyer, the prosecutor, the judge and the jury and engaged in a lengthy discussion regarding his own opinions about what he felt would be an effective goal strategy on his behalf that he had not yet had an opportunity to speak with his lawyer about . . . .  It is my opinion that at the present time he is able to understand the nature and object of the proceedings against him and to participate and assist in his own defense, should he choose to do so.  It is therefore my opinion that he is currently competent to stand trial.  (Dr. O'Brien, at 3-4) |

Rankine alleges that he filed motions to waive counsel on approximately ten dates in 2000 and also in April 2001, and that he objected to the appointment of Mr. Server in September and October 2000 and to the appointment of Mr. Churchville and Mr. Dews. See Doc. 30 at 4-5.  The docket sheets and review of the state court record do not reflect these motions or objections.[22]  Included in Rankine's second PCRA petition (filed pro se) was a copy of a letter dated June 12, 2001, in which Rankine advised the court that he

---

[22]The state court record does not contain transcripts of any of the pretrial proceedings other than the April 4, 2000 preliminary hearing, and that transcript does not contain any request for self-representation.  The transcript of the voir dire does not contain any requests by counsel or Rankine respecting representation.  N.T. 7/11/01.

wished to defend himself.  Based on the date which appears on the letter, it was written at a time Rankine had not yet been found competent to stand trial after having been found incompetent as recently as April 2001.

Rankine also alleges that he waived the right to counsel during his July 2001 trial, and that Judge Means erroneously found him competent to stand trial but not to waive counsel in violation of Godinez.  See Doc. 30 at 6-7.  However, no such request appears in the trial transcript.  Rankine made statements throughout the trial, at times leading to Judge Means finding that Rankine was in contempt.  These statements revealed dissatisfaction with his counsel, but they did not contain a request to waive his counsel's representation.  For example, Rankine objected to the prosecutor's opening argument on the ground that "I slept there [victim's home] every night.  I left there around 7:30 or 8:00 and I was never at her house at 11:30."  N.T. 7/12/01 at 29-30.  After an officer finished testifying, Rankine asked if he could ask a question.  Judge Means dismissed the jury and stated to Rankine "You may not raise your hand disrupting the trial.  You have a lawyer. This is the second time.  I now cite you for contempt. . . .  Any questions you want to ask, you ask your lawyer and your lawyer will ask them [if] he feels they are relevant."[23] Rankine responded "I was only trying to get my lawyer to ask about the police report I filed on the 19th of August where I gave my address . . . .  I was trying to get my lawyer

_____

[23]Judge Means told Rankine that "I let it go yesterday," although the voir dire transcript from the prior day does not reflect any discussion on this point.

to raise the issue.  These are all documents that can be proved because he [police officer] said that he could not find me."  Id. at 49-50.

    After the Commonwealth rested, Judge Means asked Rankine whether he wished to testify.  Rankine stated "I believe I should testify" because "[t]here's a bunch of things that was not brought up."  He listed items "I'm asking my lawyer to ask the court" to introduce.  Following a discussion of those items and Rankine's avowal that he was not there when the rape occurred and that the victim was lying, Judge Means ruled certain items and topics inadmissable but permitted him to testify, against his counsel's advice. N.T. 7/13/01 at 73-77.  Rankine was asked only two questions by his attorney on direct examination; whether he was at the location at the relevant time and whether he had forcible intercourse with Ms. Harper.  Id. at 78-79.  During cross-examination there were heated exchanges between Rankine and the prosecutor and also between Rankine and Judge Means, some of which accused his attorney of neglect, but these exchanges did not involve requests to represent himself.  For example, when asked by Judge Means whether the security manager at the Rite Aid where the victim worked had been subpoenaed to come to court, Rankine testified "My lawyer never spoke to him and I tried to contact him.  Mr. Dews was appointed April 4th to defend me.  I have not seen Mr. Dews until I came to court the first day."  Answering further questions from the court, he testified that his prior lawyers refused to communicate with him and that his lawyers refused to

subpoena witnesses who could testify as to where he was at the time of the incident.  Id. at 86-88.

At the end of the charge conference, Judge Means asked Rankine "What are you holding up?", to which he responded "The police report that I filed on August 19th, 1999."  Judge Means again held him in contempt.  His attorney objected to a flight instruction, which Judge Means overruled.  After the verdict was returned, Rankine stated that he "would rather do my own appeals."  N.T. 7/16/01 at 42-43, 82.

On this record, the Superior Court's resolution of this issue was not unreasonable.  Although Judge Means' competency finding is not itself in the record or transcribed, the record establishes that Rankine was found competent to proceed to trial on July 10 or 11, 1999, on the basis of Dr. O'Brien's report.  That report stated that he was competent to stand trial and that he was able to "participate and assist in his own defense, should he choose to do so."  At no time after a finding that he was competent did Rankine ask to waive counsel and represent himself.  The only indications of a request to represent himself were the January 29, 2001 docket entry, over five months before he was found competent to stand trial and trial began, and then on July 16, 2001, after the verdict was returned.  See supra at 32, 37.  Rankine's assertion that he wrote the trial court on June 12, 2001, asking to represent himself appears nowhere in the state court record, and was not presented by Rankine to the state courts until his second PCRA petition.  See supra at 34-35.  It is true that there is no indication that Mr. Dews met with Rankine before trial,

37

which is troubling, but that does not provide a basis alone to find ineffectiveness.

Rankine expressed his frustration with his counsel at numerous times during the trial, but

did not ask to waive representation by counsel or to try the case by himself.  There is also

no indication that Rankine told Mr. Dews to raise such a request with Judge Means.

Thus, there was no objection on the record to preserve on appeal.  Therefore, the Superior

Court's conclusion that the issue was waived and had no factual support in the record was

reasonable.

> b.     Ineffective assistance during argument

Based on the Superior Court's brief discussion of the issue in Rankine's first

collateral appeal, I conclude that he also exhausted the claim that his trial counsel was

ineffective for giving contradictory opening and closing arguments.  Specifically, the

Superior Court found that "[Rankine] is unable to sustain th[e] burden [of proving

ineffectiveness] in this case with his general and unsupported claims that trial counsel

failed to give effective opening and closing arguments."  <u>Commonwealth v. Rankine</u>, 903

A.2d 50 (table), No. 555 EDA 2004, at 2-3 (Pa. Super. May 3, 2006).

In his habeas petition, Rankine asserts that his trial counsel was ineffective for

"giving contradictory opening and closing arguments during trial."  Doc. 6 at 10.  His

claim is difficult to discern.  In the facts supporting the claim, Rankine refers to several

instances during the trial where his counsel allegedly conceded facts detrimental to

Rankine, but then denied the same facts in his closing argument.  <u>See</u> <u>id.</u> at 10, 12.  For

example, Rankine cites counsel's opening argument in which counsel allegedly stated, "this incident occurred on August 12, 1999 at 11:30 a.m. in North Philadelphia." Id. at 12.[24] Yet the defense theory of the case was that the victim was not telling the truth and the rape never happened. See N.T. 7/16/01 at 15 ("the only conclusion that you could come to is this, and that is she's not telling the truth, or it just didn't happen").

I conclude that Rankine's argument is premised on individual statements in counsel's opening that Rankine has taken out of context. For example, counsel recited what he expected the victim to tell the jury from the stand, "you'll find out from Miss Harper that Mr. Rankine entered the bedroom. You'll find out that sexual intercourse did take place, according to Miss Harper." N.T. 7/12/01 at 27. Counsel was not conceding that these actions actually took place. He was merely stating what he expected Ms. Harper's testimony would be. Similarly, when counsel stated, "[y]ou will find out that the incident takes place around 11:30 and she [Miss Harper] then goes to work," id. at 28, he was merely continuing to recite his expectation of Ms. Harper's testimony.[25] After this recitation in his opening, defense counsel then proceeded to explain why Ms. Harper's version of the events did not "make sense," and asked the jurors to look for the

---

[24]Rankine has misquoted the opening. Based on his citation, counsel actually said, "[y]ou will find out that the incident takes place around 11:30 and she [Miss Harper] then goes to work." N.T. 7/12/01 at 28.

[25]An objection that Rankine put on the record after the openings seems to evidence his misunderstanding of his counsel's opening statement. Rankine asked to put an objection on the record and pointed out that he was not at Ms. Harper's house at 11:30 when this incident allegedly took place. N.T. 7/12/01 at 30.

inconsistencies in her story during the trial testimony.  Id.  During the closing, defense

counsel focused on inconsistencies in the testimony and pointed out details that did not

"make sense."  See N.T. 7/16/01 at 11.[26]   At no point did counsel concede any of the

allegations against his client.  Read in context, defense counsel encouraged the jury to

find reasonable doubt based on inconsistencies in the testimony and between the

testimony and the other evidence.  Under Strickland, Rankine cannot establish that

counsel's opening and closing caused him any prejudice.  Thus, the Superior Court's

determination -- that Rankine had not met his burden with his "general and unsupported

claims that trial counsel failed to give effective opening and closing arguments"-- is

consistent with Strickland and does not involve an unreasonable determination of the

facts.

## III.   **CONCLUSION**

All but two of Rankine's claims are procedurally defaulted and he has failed to

establish cause and prejudice or a fundamental miscarriage of justice to excuse his

defaults.  His claim regarding requests to represent himself is meritless because there is

---

[26]Specifically, defense counsel noted that although Ms. Harper testified about prior instances of abuse, she never contacted the police or went for medical attention.  N.T. 7/16/01 at 7.  He pointed out that despite an alleged history of abuse, Ms. Harper voluntarily let Rankine back into her apartment, id. at 7-8, and argued that the medical records did not include evidence of a forcible rape.  Id. at 8.  Counsel noted the inconsistencies in the victim's testimony describing how Rankine allegedly restrained her and kept her from screaming.  Id. at 9.  Counsel left the jurors to ponder why a complaint of rape was not reported immediately and why the police did not react in a more emergent fashion.  Id. at 10-12.

no evidence that Rankine actually requested to waive counsel and represent himself after he was found competent.  Finally, Rankine's complaint regarding counsel's opening and closing argument is meritless because it is unsupported by the record.  The Superior Courts adjudication of these two claims was consistent with federal law and a involved a reasonable determination of the facts.

Therefore, I make the following:

## R E C O M M E N D A T I O N

AND NOW, this 29th  day of June, 2012, IT IS RESPECTFULLY RECOMMENDED that the petition for writ of habeas corpus be DENIED.  There has been <u>no</u> substantial showing of the denial of a constitutional right requiring the issuance of a certificate of appealability.  Petitioner may file objections to this Report and Recommendation.  <u>See</u> Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.

/s/ Elizabeth T. Hey
_____
ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE

41